**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mary Shahadi, | No. CV-25-03363-PHX-SMB |
| Plaintiff, | **ORDER** |
| v. | |
| Navy Federal Credit Union, | |
| Defendant. | |

Pending before the Court is *pro se* Plaintiff Mary Shahadi's Complaint (Doc. 1), and Application for Leave to Proceed In Forma Pauperis (Doc. 2). After screening Plaintiff's Complaint pursuant to 28 U.S.C. § 1915(e)(2), the Court dismisses the Complaint for the reasons explained below.

**I.    LEGAL STANDARD**

When a plaintiff seeks to proceed in forma pauperis the Court must review the complaint to determine whether the action: (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B). Additionally, Rule 8(a) of the Federal Rules of Civil Procedure requires that:
> A pleading that states a claim for relief must contain: (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

1        Although Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). A complaint that provides "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor will a complaint suffice if it presents nothing more than "naked assertions" without "further factual enhancement." *Id.* at 557.

## II. DISCUSSION

Plaintiff asserts the following counts against Defendant: (1) violation of the Fair Debt Collection Practices Act ("FDCPA"); (2) violation of the Fair Credit Reporting Act ("FCRA"); (3) negligence/breach of privacy; (4) spoliation of evidence/obstruction; and (5) intentional infliction of emotional distress ("IIED"). (Doc. 1 at 2.) The Court finds Plaintiff fails to state a claim for relief as to each count.

### A. FDPA

The FDCPA prohibits abusive collection tactics by debt collectors. *See* 15 U.S.C §§ 1692–1692o. Debt collectors are strictly liable for FDCPA violations. *Clark v. Cap. Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1175 (9th Cir. 2006); *see Kaiser v. Cascade Cap., LLC*, 989 F.3d 1127, 1135 (9th Cir. 2021) ("The FDCPA makes debt collectors strictly liable for misleading and unfair debt collection practices."). "To prevail on a FDCPA claim, a plaintiff must sufficiently allege that (1) he was the object of collection activity arising from a consumer debt as defined by the FDCPA; (2) the defendant is a debt collector as defined by the FDCPA; and (3) the defendant engaged in an act or omission prohibited by the FDCPA." *Hamilton v. Tiffany & Bosco PA*, No.

CV-14-00708-PHX-GMS, 2015 WL 11120694, at *2 (D. Ariz. Feb. 10, 2015), *aff'd*, 713 F. App'x 674 (9th Cir. 2018).

Here, Plaintiff alleges Defendant "attempted to collect disputed debts without validation, sent improper settlement offers, and engaged in deceptive and unfair practices." (Doc. 1 at 2.) The Court finds Plaintiff fails to state a claim under the FDCPA.

First, Plaintiff fails to establish that the subject debt is covered by the FDCPA. "As a threshold matter, a suit brought under the FDCPA must involve a 'debt' within the meaning of the statute." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). Under the FDCPA, a "debt" is an obligation incurred "primarily for personal, family or household purposes." 15 U.S.C. § 1692a(5). Thus, the FDCPA "applies to consumer debts and not business loans." *Bloom v. I.C. Sys., Inc.*, 972 F.2d 1067, 1068 (9th Cir. 1992). When making this threshold determination, "courts may look to the ostensible purpose for which the obligation was entered into, but it is the funds' actual use that is paramount." *Davis v. Hollins L.*, 968 F. Supp. 2d 1072, 1077 (E.D. Cal. 2013). Plaintiff does not plead any facts explaining the purpose of the debt or how she used the funds. Without any further facts, the Court cannot "determine whether the transaction was primarily consumer or commercial in nature." *Bloom*, 972 F.2d at 1068 (citation modified); *Harper v. Collection Bureau of Walla Walla, Inc.*, No. C06-1605-JCC, 2007 WL 4287293, at *4 (W.D. Wash. Dec. 4, 2007) (stating that "[t]he FDCPA does not protect every imaginable debt").

Second, a debt collector can seek payment without first validating the debt. *See Randolph v. IMBS, Inc.*, 368 F.3d 726, 729 (7th Cir. 2004) ("Courts do not impute to debt collectors other information that may be in creditors' files—for example, that debt has been paid or was bogus to start with. This is why debt collectors send out notices informing debtors of their entitlement to require verification and to contest claims."). Therefore, Plaintiff's allegation that Defendant failed to verify a disputed debt is not actionable under the FDCPA.

Third, the Court is unaware how sending "improper settlement offers" violates the FDCPA. Without more information, the Court is unsure if the Plaintiff is alleging that

these offers were fraudulent (potentially actionable) or if Plaintiff just did not like the offer (not actionable). Plaintiff must describe why these settlement offers were "improper;" the Court will not speculate otherwise. *See Aunhkhotep v. Thomas*, No. 4:24-cv-01551-HEA, 2025 WL 328057, at *1 (E.D. Mo. Jan. 29, 2025) ("The Court will not supply additional facts or construct legal theories to support the plaintiff's claims.").

Fourth, Plaintiff's remaining allegation that Defendant "engaged in deceptive and unfair practices" is too conclusory to support a cause of action under the FDCPA. *See Iqbal*, 556 U.S. at 678. Plaintiff fails to allege "sufficient factual matter" to demonstrate that it is "plausible" that Defendant engaged in such deceptive and unfair practices. *Id.*

Accordingly, Plaintiff fails to state a claim under the FDCPA, and the Court dismisses the count with leave to amend.

**B. FCRA**

Congress enacted the FCRA "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007). The FCRA regulates credit reporting agencies ("CRAs") and those furnishing information to CRAs. 15 U.S.C. § 1681(b); § 1681s-2. A furnisher has a duty to report accurate information to CRAs and investigate consumer disputed information when a CRA notices the furnisher of the dispute. § 1681s-2(a), (b).

"The purpose of § 1681s-2(b) is to require furnishers to investigate and verify that they are in fact reporting complete and accurate information to the CRAs after a consumer has objected to the information in his file." *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1164 (9th Cir. 2009). After conducting a reasonable investigation, "the furnisher must correct or delete inaccurate information." *Gross v. CitiMortgage, Inc.*, 33 F.4th 1246, 1251 (9th Cir. 2022). However, before a court considers the reasonableness of the furnisher's procedures, the consumer must make a prima facie showing of inaccuracy in the credit report. *See id.* "[I]f there is no inaccuracy, then the reasonableness of the investigation is not in play." *Id.*

In sum, to establish a claim under § 1682s-2(b), a plaintiff must show "(1) a credit

reporting inaccuracy existed on plaintiff's credit report; (2) plaintiff notified the consumer reporting agency that plaintiff disputed the reporting as inaccurate; (3) the consumer reporting agency notified the furnisher of the alleged inaccurate information of the dispute; and (4) the furnisher failed to investigate the inaccuracies or further failed to comply with the requirements in 15 U.S.C. 1681s-2(b)(1)(A)–(E)." *Clifford v. LexisNexis Risk Data Mgmt. LLC*, No. CV-21-01145-PHX-DJH, 2023 WL 2478864, at *5 (D. Ariz. Mar. 13, 2023).

Here, Plaintiff fails to identify a specific inaccuracy on her credit report. "[I]nformation is inaccurate for purposes of 15 U.S.C. § 1681s-2(b) where it either is 'patently incorrect' or is 'misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions.'" *Shaw v. Experian Info. Sols., Inc.*, 891 F.3d 749, 756 (9th Cir. 2018) (quoting *Gorman*, 584 F.3d at 1163). Plaintiff merely states "Defendant reported false information to credit bureaus." (Doc. 1 at 2.) This statement is conclusory and fails to inform Defendant which information is patently incorrect or misleading. *See Twombly*, 550 U.S. at 555. Therefore, Plaintiff fails to state a claim under the FCRA, and the Court dismisses the count with leave to amend.

### C. Negligence/Breach of Privacy

Here, Plaintiff alleges Defendant "mailed to Plaintiff confidential financial and legal records of another NFCU member, including documents authored by that member's retained counsel." (Doc. 1 at 1.) Plaintiff states "[t]hese records contained highly sensitive personal identifiers and privileged attorney-client communications," and argues that this "disclosure constitutes a serious breach of privacy and negligence, exposing plaintiff to liability for handling information she never should have received." (*Id.*) Therefore, Plaintiff alleges two claims within this count: breach of privacy, and negligence. Both implicate threshold standing issues.

The Court's jurisdiction is limited to cases and controversies. *Raines v. Byrd*, 521 U.S. 811, 818 (1997). To show that a case or controversy exists, a plaintiff must establish that she has standing to bring her alleged claims. *Lujan v. Defs. of Wildlife*, 504 U.S. 555,

560–61 (1992). To establish standing, "a plaintiff must demonstrate (1) that he or she suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be redressed by the requested judicial relief." *Thole v. U.S. Bank N.A.*, 590 U.S. 538, 540 (2020). As to Plaintiff's negligence claim, she fails to plead an imminent injury in fact. And, as to Plaintiff's breach of privacy claim, she fails to establish she has third-party standing to assert the privacy interests of another.

1. *Injury in Fact*

Plaintiff alleges Defendant violated "reasonable duties of care" by "disclosing to Plaintiff the confidential financial and legal dispute records of another member." (Doc. 1 at 2.) She states Defendant's negligent disclosure injured her because it exposed her "to liability for handling information she never should have received." (*Id.* at 1.) Plaintiff's alleged future injury "is too speculative to invoke the jurisdiction of an Art. III court." *Whitmore v. Arkansas*, 495 U.S. 149, 157 (1990).

"A party facing prospective injury has standing to sue where the threatened injury is real, immediate, and direct." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008). "Although imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is *certainly* impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (emphasis in original) (quoting *Defs. of Wildlife*, 504 U.S. at 565 n.2). This means the future injury cannot be conjectural or hypothetical. *See Defs. of Wildlife*, 504 U.S. at 560.

Here, Plaintiff does not allege that the apparent liability she faces is real or certainly impending—she simply states that she faces liability. Yet, such liability is hypothetical at best. Plaintiff does not allege that any party has initiated proceedings against her. Nor does she allege that such proceedings are on the horizon. It is no surprise that Plaintiff fails to make this showing because she did not intentionally view another's private information.

In Arizona, a person is liable for invading the privacy of another when he or she

"intentionally intrudes" upon the "private affairs or concerns" of another, and if such intrusion "would be highly offensive to a reasonable person." *Hart v. Seven Resorts Inc.*, 947 P.2d 846, 853 (Ariz. Ct. App. 1997) (quoting Restatement (Second) of Torts § 652B (A.L.I. 1977)). Plaintiff alleges *Defendant* exposed her to another's private information; *she* did not intentionally intrude upon another's private affairs. Thus, any "liability" is a speculative possibility. *See Whitmore*, 495 U.S. at 158. ("[W]e have said many times before and reiterate today: Allegations of possible future injury do not satisfy the requirements of Art. III."). Accordingly, the Court does not have jurisdiction over Plaintiff's negligence claim because she does not establish standing.

2. *Third-Party Standing*

In addition to Article III standing, "[p]rudential limitations on federal court jurisdiction dictate that . . . a party must assert his or her own legal rights and interests, not those of others." *Washington v. Trump*, 145 F.4th 1013, 1024 (9th Cir. 2025). "This rule assumes that the party with the right has the appropriate incentive to challenge (or not challenge) governmental action and to do so with the necessary zeal and appropriate presentation." *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004). However, a party may have standing to sue on behalf of a third party if "three important criteria are satisfied": (1) "[t]he litigant must have suffered an injury in fact, thus giving him or her a sufficiently concrete interest in the outcome of the issue in dispute"; (2) "the litigant must have a close relation to the third party"; and (3) "there must exist some hindrance to the third party's ability to protect his or her own interests." *Powers v. Ohio*, 499 U.S. 400, 410–11 (1991) (citation modified).

Here, Plaintiff does not contend Defendant impermissibly disclosed any of her own private information to a third party. Rather, Plaintiff alleges Defendant disclosed another's information to her, constituting "a serious breach of privacy." (Doc. 1 at 1.) Therefore, Plaintiff attempts to assert the privacy rights and interests of a third party. However, Plaintiff lacks standing to do so. Plaintiff does not allege a close relation to this other individual or that the individual is unable to protect his or her own interests. As such, the

Court finds no reason Plaintiff should assert the legal interests of this third party. Accordingly, the Court does not have jurisdiction over Plaintiff's breach of privacy claim because Plaintiff does not establish that she has standing. *See Coal. of Clergy, L., & Professors v. Bush*, 310 F.3d 1153, 1164 (9th Cir. 2002) (finding no third-party standing where a party fails to demonstrate a close relationship with the third party).

### D. Spoliation of Evidence/Obstruction

Plaintiff alleges Defendant "deleted Plaintiff's internal account communications from its online platform after litigation was reasonably foreseeable." (Doc. 1 at 2.) Thus, Plaintiff brings a state claim for "spoliation of evidence." (*Id.*)

Plaintiff places the cart before the horse. "Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Compass Bank v. Morris Cerullo World Evangelism*, 104 F. Supp. 3d 1040, 1051–52 (S.D. Cal. 2015). However, Arizona does not recognize "a distinct cause of action" for first-person spoliation. *Lips v. Scottsdale Healthcare Corp.*, 229 P.3d 1008, 1009 (Ariz. 2010); *Liberti v. City of Scottsdale*, No. 1 CA-CV 22-0599, 2023 WL 4078539, at *2 (Ariz. Ct. App. June 20, 2023) ("The Arizona Supreme Court has repeatedly declined to recognize spoliation as an independent tort."). Rather, Arizona courts "address such allegations in the underlying suit through sanctions." *Lips*, 229 P.3d at 1009; *see also* Fed. R. Civ. P. 37. Put simply, an allegation of spoliation of evidence can accompany a cause of action, but it cannot stand in the place of that action. Accordingly, the Court finds Plaintiff cannot state a claim for spoliation of evidence as a standalone cause of action.

### E. IIED

Under Arizona law, the "tort of intentional infliction of emotional distress ["IIED"] requires" (1) "proof of extreme and outrageous conduct by the defendant"; (2) "defendant's intent to cause emotional distress or reckless disregard of the near certainty that such distress will result from defendant's conduct"; and (3) "resulting severe emotional distress." *Wallace v. Casa Grande Union High Sch. Dist. No. 82 Bd. of*

*Governors*, 909 P.2d 486, 495 (Ariz. Ct. App. 1995). "Extreme and outrageous conduct is conduct so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Christakis v. Deitsch*, 478 P.3d 241, 245 (Ariz. Ct. App. 2020) (citation modified).

Here, Plaintiff alleges "Defendant's conduct was extreme and outrageous" "causing Plaintiff severe anxiety and emotional harm." (Doc. 1 at 2.) Such threadbare recitals of an IIED cause of action are insufficient to state a claim for relief. *See Iqbal*, 556 U.S. at 678.

## III.  LEAVE TO AMEND

"[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (citation modified). The Court grants Plaintiff leave to amend all counts except for count four (spoliation of evidence). Plaintiff's amended complaint must address the deficiencies identified above and should follow the form detailed in Rule 7.1 of the Local Rules of Civil Procedure. Within thirty (30) days from the date of entry of this Order, Plaintiff may submit a First Amended Complaint. Plaintiff must clearly designate on the face of the document that it is the "First Amended Complaint." The First Amended Complaint must be retyped or rewritten in its entirety and may not incorporate any part of the original Complaint by reference.

The Court draws attention to the District of Arizona's Federal Court Advice Only Clinic, [Federal Court Advice Only Clinic - Phoenix | District of Arizona | United States District Court (uscourts.gov)](). The Court also notes the E-Pro Se program which assists litigants with creating a Complaint form, [Welcome - eProSe (uscourts.gov)](). Lastly, the Court advises Plaintiff that certain resources for self-represented parties, including a handbook and the Local Rules, are available on the Court's website, [www.azd.uscourts.gov](), by following the link "Self-Represented Litigants."

## IV. CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** granting Plaintiff's Application to Proceed In Forma Pauperis (Doc. 2.)

**IT IS FURTHER ORDERED** that Plaintiff's Complaint (Doc. 1) is **dismissed** with leave to file a First Amended Complaint within thirty (30) days of the date of this Order.

**IT IS FURTHER ORDERED** that if Plaintiff does not file a First Amended Complaint within thirty (30) days of the date of this Order, the Clerk of Court shall dismiss this action without further order from the Court.

**IT IS FURTHER ORDERED** that if Plaintiff elects to file a First Amended Complaint, it may not be served unless and until the Court issues an Order screening the First Amended Complaint pursuant to 28 U.S.C. § 1915(e)(2).

Dated this 8th day of October, 2025.

Honorable Susan M. Brnovich
United States District Judge